IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 13, 2020

## CHRISTOPHER N. HERNANDEZ v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. F-70399    Royce Taylor, Judge**

---

### No. M2019-01160-CCA-R3-PC

---

The petitioner, Christopher N. Hernandez, appeals the denial of his petition for post-conviction relief, which petition challenged his convictions of rape of a child, aggravated sexual battery, and solicitation of a minor,[1] alleging that he was deprived of the effective assistance of counsel. Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Thomas E. Parkerson and Cody F. Fox (on appeal), and Amanda Gentry (at hearing), Murfreesboro, Tennessee, for the appellant, Christopher N. Hernandez.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Assistant Attorney General; Jennings H. Jones, District Attorney General; and Hugh Ammerman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Because the trial record is not included in the record before us and because no direct appeal was filed in the underlying case, the facts of the petitioner's trial, convictions, and sentencing in the record are scarce. From the post-conviction court's order, we glean that the petitioner's first trial resulted in a mistrial. At a second trial, a jury convicted the petitioner of nine counts of rape of a child, two counts of aggravated sexual battery, and one count of solicitation of a minor. The petitioner agreed to a negotiated sentence of 20 years in exchange for his waiving his right to appeal.

---

[1]     Because the record on appeal does not include the trial record or judgments of conviction other than one corrected judgment for count 7, we glean the facts of this case from the post-conviction court's order.

The petitioner filed a timely, pro se petition for post-conviction relief, alleging the ineffective assistance of counsel. After the appointment of counsel, the petitioner had a bifurcated evidentiary hearing on November 9, 2018, and May 24, 2019.

At the evidentiary hearing, trial counsel testified that, after the petitioner was convicted at his second trial, counsel met with him and discussed potential errors that could be raised on appeal, and counsel believed there was a particular error that "would possibly lead to a new trial." He also discussed the possibility of negotiating an agreed sentence "in light of the fact that we may have a decent chance of getting a new trial." Over the course of a couple of months, prior to the sentencing hearing, counsel continued to discuss the matter with the petitioner, explaining to the petitioner that he could "very well" face consecutive sentences that could result in an effective life sentence. Ultimately, the petitioner decided to accept the negotiated sentence and waive his right to appeal although counsel knew "that he was somewhat torn about that. It was a tough decision for him." Counsel stated that he reviewed the entire agreement with the petitioner. Counsel also said that the negotiated sentence agreement was a strategic decision to mitigate the petitioner's sentencing exposure because counsel could not be certain of the result of a motion for new trial and appeal.

Trial counsel stated that, in the course of his representation, he "did everything" the petitioner asked of him. After the mistrial, counsel moved to dismiss the case on double jeopardy grounds and sought an interlocutory appeal of the trial court's denial of that motion. His attempt at an interlocutory appeal was denied, but the issue was preserved for direct appeal. Counsel stated that he kept the petitioner abreast of the proceedings on the motion to dismiss and provided him with copies of the documents.

At the second trial, counsel had the benefit of having heard all of the witnesses' testimony previously, and his theory of defense remained the same from the first trial to the second. The petitioner did not indicate that he wanted anything handled differently in the second trial. Counsel discussed with the petitioner the possibility of calling certain other witnesses at the second trial but made the strategic decision not to do so because he could get the same evidence from the petitioner's testimony and would not risk those witnesses denying certain facts. Counsel acknowledged that he may have been late to certain court appearances but denied that he was late for trial. Counsel stated that, although he was representing a party involved in an unrelated, high-profile rape case at the same time as he represented the petitioner, his work on that case did not inhibit his representation of the petitioner.

During cross-examination, trial counsel stated that the primary difference in the first and second trials "was the approach of the prosecution." His defense strategy at

both trials was to emphasize that no evidence corroborated the victim's allegations and that the victim had a motive to fabricate the allegations. Counsel acknowledged that he did not call a medical expert to testify but explained that he was able to get the evidence he needed from the State's medical expert on cross-examination. After the conclusion of the second trial, counsel immediately began researching issues that he believed were trial errors, and he met with the petitioner one or two days later to discuss the issues. Counsel explained to the petitioner that he was facing a possible sentence of approximately 100 years if the court ran the sentences consecutively, and, although counsel could not predict what the court would do, he believed the circumstances of the offenses would permit consecutive sentences. Before the petitioner agreed to the negotiated sentence, counsel prepared to call the petitioner's mother and several other family members to testify at the sentencing hearing.

Although counsel believed that the petitioner had a good chance at receiving a new trial on appeal, he was less optimistic about achieving a different result at a new trial. Counsel explained that at the first trial, the State called several witnesses who were beneficial to the defense on cross-examination. The State opted not to call those same witnesses at the second trial, and counsel also decided not to call them because he did not believe he could get the same beneficial testimony from them on direct examination.

Trial counsel acknowledged that he represented the petitioner for a reduced fee of approximately $10,000 but asserted that he gave the petitioner "100 percent, . . . doing everything that we could possibly do." Counsel said that the petitioner did not owe him any money at the conclusion of his second trial. He explained that when a client retains him for trial, he routinely offers to represent the client on appeal by appointment. Although the petitioner did not pay counsel any additional funds after his conviction, counsel stated that he was prepared to argue the motion for new trial and to appeal the case if the petitioner opted to reject the sentencing agreement. Counsel denied making any guarantees to the petitioner regarding the outcome of his case.

The petitioner testified that, prior to the second trial, trial counsel advised him to reject a plea offer from the State for a 12-year sentence "because we were going to win this trial." The petitioner stated, "In his words, he was a God in Murfreesboro after what he had done to" the previous district attorney. The petitioner said that the second trial was "totally different" from the first trial, explaining that the State did not call the same witnesses at the second trial. The petitioner considered the witnesses that the State declined to call to be "crucial to [his] case because they actually worked in [his] favor." The petitioner stated that he did not learn that the State would not call those witnesses until the day of the second trial. The petitioner said that he asked counsel "several times" to call a medical expert to rebut the testimony of the State's medical expert, but counsel told the petitioner that they did not need their own expert. The petitioner stated that if counsel had

-3-

"told me the exact stats that I know now," he would have accepted the State's plea offer and not have gone to trial; however, because the petitioner relied on counsel's advice that "we were almost guaranteed a win" at trial, he rejected the plea offer.

The petitioner testified that he met with counsel only twice to prepare for trial and otherwise saw him on a weekly basis to make a payment toward his fee. The petitioner said that, after the second trial, counsel told him that he would begin the appeal process but also told him it would not "do you any good" because the motion for a new trial would be heard by the same trial judge who would have addressed at trial any issue he believed to be in error. Because the petitioner understood counsel's advice to mean that an appeal would "be obsolete" and that he would lose a new trial, he decided to forgo the appeal. The petitioner stated that counsel visited him after his conviction and told him that he had found two potential errors at trial but that they were "really irrelevant." Counsel suggested negotiating for a 20-year sentence. The petitioner acknowledged that counsel explained his maximum sentencing exposure, telling him that if he did not accept the sentencing agreement, he "would most likely get 100 years" and that he "would most likely lose the appeal process because I would have the same judge." The petitioner stated that he accepted the sentencing agreement because "that was the best option" and because he "felt that that was the only thing that I could do." The petitioner also said that because he had paid counsel "$30,000 to do his best for me," he relied on counsel's advice.

The petitioner stated that when trial counsel first began representing him, counsel promptly responded to the petitioner's inquiries; however, after counsel began working on another high-profile case, the petitioner "could no longer get in touch with him through text message" or by phone. The petitioner explained that during the first trial, his relationship with counsel "was pretty decent" and that counsel "was there" and "always on time." During the second trial, however, "there was no relationship." In preparation for the second trial, the petitioner met with counsel once, for only 53 minutes, after having waited 45 minutes for counsel to arrive. The petitioner estimated that, after the second trial, counsel spent "[p]robably a total of 30 minutes" discussing his options regarding the sentencing agreement and option to appeal. The petitioner stated that after the second trial, counsel told him that to continue representation, he would require a new contract and payment of "twice as much" as what the petitioner paid for trial representation, amounting to $60,000.

During cross-examination, the petitioner clarified that if he had known that "85 percent of these cases end in a loss regardless of medical evidence or any other kind of evidence," he would have accepted the plea offer and not gone to trial. The petitioner stated that he would have felt like he had had a fair trial if counsel had called medical experts and presented the medical records that the petitioner had requested. The petitioner

also indicated that counsel was unprepared for the second trial because he did not know that the State was not going to call certain witnesses that it had called at the first trial.

In its written order denying post-conviction relief, the post-conviction court found that trial counsel met with the petitioner in preparation for the second trial, interviewed witnesses, and filed certain pretrial motions. The court also noted that trial counsel "was already extremely familiar with the [p]etitioner's case because he had previously tried the case in the first trial." Further, the post-conviction court found that counsel's decision to not call certain witnesses at the second trial was strategic. Finally, the court found that counsel negotiated an agreed sentence with the State, giving the petitioner "an option to avoid a possible 100 year sentence."

In this timely appeal, the petitioner argues that the cumulative effect of trial counsel's errors prejudiced the outcome of his case. The State argues, first, that the record is insufficient to facilitate our review. Alternatively, the State argues that the post-conviction court did not err by denying the petitioner relief.

We first address the sufficiency of the record. Although certified as complete, the post-conviction record submitted to this court lacked the transcript and exhibit of the November 9, 2018 portion of the bifurcated evidentiary hearing. Upon order of this court, the record was supplemented with the necessary documents to form a complete record of the post-conviction proceedings below. Accordingly, the record is sufficient to facilitate our review, and we will review the case on its merits.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and

that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Here, the record supports the post-conviction court's conclusion that trial counsel's performance was not deficient. The petitioner asserts that counsel should have called a medical expert and introduced certain medical records into evidence at the second trial, but the petitioner failed to present the testimony of a medical expert or the records that he claims would have benefited his defense. Likewise, the petitioner has failed to show what additional evidence counsel could have discovered with further investigation. Generally, a petitioner fails to establish his claim that counsel did not properly investigate or call a witness if he does not present the witness or evidence to the post-conviction court because a court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Consequently, the petitioner cannot show that counsel performed deficiently by declining to present certain witnesses or evidence at trial.

Moreover, the post-conviction court accredited trial counsel's testimony that he was prepared for trial and that the decision to not call certain witnesses was strategic. Because the petitioner has failed to provide the testimony of those witnesses that he contends would have benefited his defense, the evidence does not preponderate against the

-6-

post-conviction court's findings.  As to the petitioner's assertion that he rejected the State's plea offer because counsel told him that he was "a God in Murfreesboro" and that he was "almost guaranteed a win" at trial, counsel's testimony established that he made no guarantees to the petitioner as to the outcome of his case.

The petitioner argues that, even if trial counsel's individual errors, standing alone, do not fall below the constitutionally required standard of performance, the cumulative effect of those errors resulted in counsel's deficient performance and prejudiced the petitioner's defense.  The cumulative error doctrine, however, does not function in the post-conviction context as the petitioner asserts.  Instances of ineffective assistance of counsel are deemed to constitute a single rendering of ineffective assistance. *Thompson v. State*, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997) ("Ineffective assistance of counsel is generally 'a single ground for relief' under the post-conviction statute." (quoting *Cone v. State*, 927 S.W.2d 579, 581-82 (Tenn. Crim. App. 1995))).  As such, a petitioner may assert *via post-conviction law*, that an aggregation of instances establishes the prejudice prong of *Strickland*.  Here, because none of counsel's actions amounted to deficient performance, no prejudice can be shown because there are no acts of deficient performance which may be aggregated.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE